**In re CANOE MANUFACTURING CO., INC., Debtor.**

No. 87–04169.

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 1, 2012.

Order Denying Reconsideration
March 6, 2012.

Adrienne N. Roth, Ciardi, Ciardi & Astin, Philadelphia, PA, for Debtor.

## MEMORANDUM

BRUCE FOX, Bankruptcy Judge.

Before me is a motion filed by Mr. M. Robert Ullman, acting *pro se* and purportedly on behalf of the debtor, to reopen this closed chapter 7 case. The motion is opposed by Joseph H. Jones, Esq. and the law firm of Williamson, Friedberg and Jones. The objectors, who would be defendants in an adversary proceeding that Mr. Ullman intends to bring in this court were his motion granted, argue that no valid purpose would be achieved by reopening this bankruptcy case that was closed on March 3, 1995—almost 17 years ago.

To the extent that it is the corporate debtor that purports to seek reopening, it can only act through counsel. As Mr. Ullman is not an attorney engaged to act on behalf of the corporate debtor, he

may not properly seek relief in this federal court on behalf of Canoe. *See, e.g., Rowland v. California Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 201–02, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993); *United States v. Cocivera,* 104 F.3d 566, 572 (3d Cir.1996); *Simbraw, Inc. v. United States,* 367 F.2d 373 (3d Cir. 1966); *In re Earle Indus., Inc.,* 67 B.R. 822 (Bankr.E.D.Pa.1986); *see also* Fed. R. Bankr.P. 9010(a), Advisory Committee Note 1983 ("[t]his rule ... does not purport to change prior holdings prohibiting a corporation from appearing *pro se* ").

▇ Recognizing that a non-debtor may seek to reopen a closed case, *see* Fed. R. Bankr.P. 5010 ("A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code."), and that Mr. Ullman was, or still is, a shareholder of the debtor, I believe it appropriate, particularly given Mr. Ullman's numerous litigation activities in various state and federal courts, to explain the reasons why—even if the debtor were represented by counsel, or to the extent Mr. Ullman is seeking relief in his shareholder capacity—it would be an inappropriate exercise of discretion to reopen this case. This bankruptcy court has no power now to grant Mr. Ullman the relief he hopes to achieve by reopening this case.

## I.

Upon review of the numerous documents submitted by Mr. Ullman and the objectors, various reported decisions, as well as the docket entries in this case, the following facts are relevant to this contested matter and are not subject to dispute.

Canoe Manufacturing Co., Inc. filed a voluntary petition in bankruptcy under chapter 11 on August 20, 1987. Mr. Ullman was the debtor's "Chief Executive Officer and sole shareholder" at the time of its bankruptcy filing. *Ullman v. Merid-* *ian Bank,* 1993 WL 15644, at *2 (E.D.Pa. 1993). Prior to this bankruptcy petition, Mr. Ullman and his spouse guaranteed one or more outstanding loans to the debtor made by Meridian Bank.

For reasons (not clear on the record before me but) not relevant, Canoe's chapter 11 case was converted to chapter 7 effective March 6, 1989. *See* docket entry # 103. Upon conversion, Michael Seltzer became the chapter 7 trustee and he engaged Charles Phillips, Esq. to represent him.

By July 1989, the bankruptcy trustee had begun to liquidate assets of Canoe, and apparently all physical assets were sold at public auction in August 1989 for $1.2 million. *See Ullman v. Meridian Bank,* 1993 WL 15644, at *1. These proceeds were not enough to repay the claim of Meridian Bank and other creditors.

Mr. Ullman then urged the chapter 7 trustee to bring a lender liability claim against Meridian Bank. *See Ullman v. Meridian Bank,* 1993 WL 15644, at *2. After investigation, the trustee did not believe such litigation could be brought in good faith and so moved to abandon any such claim under 11 U.S.C. § 554(a) in May 1990, as well as claims against Mr. Lawrence Pugh (an officer of VF Corporation) and VF Corporation (whom Mr. Ullman believed tortiously interfered in Canoe's prepetition dealings with Meridian Bank). Despite Mr. Ullman's opposition thereto, the trustee's motion to abandon was granted on July 24, 1990. *See* docket entry # 169; *Ullman v. Meridian Bank,* 1993 WL 15644, at *2.

While the Canoe bankruptcy case was pending, Meridian Bank commenced a foreclosure action against Mr. Ullman and his spouse in the Pennsylvania Court of Common Pleas. *See Ullman v. Meridian Bank,* 1993 WL 15644, at *2. In opposing

foreclosure, in May 1991 Mr. Ullman obtained through discovery a document that he believed then and probably believes now constituted a prepetition loan commitment from Meridian Bank to Canoe issued in March 1986, which commitment had never been fulfilled. *See id.;* Movant's Exhibits to Motion to Reopen, ex. 5, pp. 25–32. This document, correspondence signed by an officer of Meridian Bank dated March 31, 1986, and addressed to Mr. Ullman as president of Canoe, *see* Movant's Exhibits to Motion to Reopen, ex. 5, pp. 31–32, was located in the files of Joseph H. Jones, Esq., an attorney with the firm of Williamson, Friedberg and Jones. Mr. Jones had been counsel to Canoe prior to its bankruptcy filing, and was also on the Board of Directors of Meridian Bank. He withdrew as Canoe counsel in June 1987. Movant's Exhibits to Motion to Reopen, ex. 19, p. 110 (¶ 56).

After reviewing this March 1986 document, in December 1991 the chapter 7 trustee moved to vacate the July 24, 1990 abandonment order. In so moving, the trustee submitted a post-hearing memorandum that argued that the March 1986 document, the existence of which had been unknown to him in 1990, supported a claim against Meridian Bank. He also argued in his memorandum:

> Ullman testified [at the hearing on the trustee's motion to vacate] that the commitment letter and minutes of [Meridian Bank] Loan Committee meetings were made available by Attorney Joe Jones, who was counsel for the Debtor during 1986 and was, and is, a member of the Board of Directors of Meridian Bank.

Movant's Exhibits to Motion to Reopen, ex. 1, p.4. Thus, the chapter 7 trustee was then well aware of Mr. Jones's pre-bankruptcy relationships to Meridian Bank and Canoe, as well as Mr. Jones possessing a copy of the March 1986 correspondence.

On March 11, 1992, the bankruptcy court denied the trustee's motion to vacate, ruling that the trustee's earlier decision to abandon was irrevocable. *See* docket entry # 214; Movant's Exhibits to Motion to Reopen, ex. 12, pp. 71–72. Mr. Ullman then appealed this ruling to the district court, which affirmed on June 18, 1992. *See* docket entry # 219; *Ullman v. Meridian Bank,* 1993 WL 15644, at *2.

Shortly thereafter, Mr. Ullman commenced a civil action in the federal district court, naming as defendants Meridian Bank, the chapter 7 trustee, trustee's counsel, Mr. Lawrence Pugh, Mr. Ezekiel Ketchum, and Joseph Jones, Esq. By Memorandum and Order dated January 14, 1993, the district court dismissed that civil action "with prejudice but without prejudice to plaintiff's rights to pursue any derivative rights he may have in state court." *See Ullman v. Meridian Bank,* 1993 WL 15644, at *3. This dismissal was affirmed by the Third Circuit Court of Appeals. *Ullman v. Meridan Bank,* 9 F.3d 1541 (3d Cir.1993) (table).

Mr. Ullman then filed his own motion in bankruptcy court, on April 7, 1993, seeking to vacate the July 1990 abandonment order, to amend the debtor's bankruptcy schedules and to add additional causes of action as listed assets on the debtor's schedules. He also sought to remove Mr. Seltzer as the chapter 7 trustee, and to allow himself to prosecute litigation against Meridian Bank and Messrs. Pugh, Ketchum and Jones, which claims he then valued at $11,000,000, as well as raise claims against the trustee and trustee's counsel. *See* Movant's Exhibits to Motion to Reopen, ex. 13, pp. 73–79. In this motion, Mr. Ullman wrote "[o]n July 24, 1990 the Court ordered an Abandonment of the Claim of Canoe against Meridian, Pugh *and Jones,*" *Id.,* p.74 (emphasis added).

Mr. Ullman's motion to vacate was opposed by the chapter 7 trustee, who asserted in his pleading filed in May 1993: "On July 24, 1990 this Court granted the Trustee's motion for abandonment of the Debtor's alleged claims against Meridian Bank, Lawrence Pugh, Ezekiel Ketchum and Joseph Jones." Movant's Exhibits to Motion to Reopen, ex. 14, p. 80.[1] The trustee also wrote in opposition:

Ullman attempts to argue that "[u]nless the Court orders otherwise, formally unabandoned and unadministered property that was not scheduled, thus remains property of the Estate." This property, however, was formally abandoned and therefore Ullman's argument is completely inapposite.

Movant's Exhibits to Motion to Reopen, ex. 14, p. 81.

Thus, in April and May 1993, both Mr. Ullman and the chapter 7 trustee were arguing to the bankruptcy court that the July 1990 abandonment order had addressed Canoe's potential claims against Meridian, VF, and attorney Jones. Moreover, Mr. Ullman was concerned at that time that his failure to schedule any causes of action might have future implications concerning the property of Canoe that would be considered as abandoned.

By order dated June 9, 1993, Mr. Ullman's April 1993 motion to vacate the July 1990 order and to obtain other relief was denied (with the bankruptcy court noting that Mr. Ullman was improperly attempting to represent the debtor corporation). Movant's Exhibits to Motion to Reopen, ex. 16, pp. 90–93. In denying this motion, the bankruptcy court stated in part:

[M]ovant's motion requesting permission to proceed *pro se* to recover a debt is DENIED as moot since the debt which movant seeks to recover is precisely the same alleged debt which forms the basis of the abandoned cause of action, which once abandoned, became the property of debtor and movant, as the sole shareholder of debtor was then free to pursue the cause of action without further order of this court.

*Id.,* p.91. The bankruptcy court also noted that Mr. Ullman "has already instituted suit on this cause of action in the United States District Court ...," *id.,* n. 4, referring to the 1993 civil action against Meridian Bank, Joseph Jones and others, mentioned above. No appeal from the denial of Mr. Ullman's motion to vacate and for other relief was taken.

On June 25, 1993, Mr. Ullman, again purporting to act *pro se* on behalf of the debtor, filed a motion requesting that the bankruptcy court instruct the U.S. Trustee to make a "formal investigation of the fraudulent action, responses, and information given by Meridian, Pugh (VF Corp.), Seltzer and Jones to the Court." Docket entry # 269. That motion was denied by an order entered on July 8, 1993, with no appeal taken. Docket entry # 275.

On March 3, 1995, Canoe's chapter 7 bankruptcy case was finally closed pursuant to 11 U.S.C. § 350(a). Prior to closing, in May 1993, Mr. Ullman, on behalf of himself and Canoe, commenced a civil action, *pro se,* against attorney Joseph Jones and Williamson, Friedberg & Jones in the Pennsylvania Court of Common Pleas,

---

1. The docket at entry # 230, dated May 14, 1993, also reflects that a joint response to Mr. Ullman's motion was filed by "Meridian Bank, Ezekiel Ketchum and Joseph Jones, Esquire." No copy of this response has been provided by either the movant or the objectors. Mr. Ullman made attempts to obtain a copy from court files without success and then brought a civil action against various governmental entities because the document is missing from court files. *See Ullman v. United States,* C.A. 09–3208. By order dated Jan. 27, 2010, the district court granted defendants' motion to dismiss.

Schuylkill County, asserting a claim of malpractice by Mr. Jones in his prepetition representation of Canoe while also being a director of Meridian Bank, and seeking $40,200,000 in compensatory and punitive damages. *See* Movant's Exhibits to Motion to Reopen, ex. 18, pp. 100–06. This complaint was amended by an attorney representing Mr. Ullman and/or Canoe. Movant's Exhibits to Motion to Reopen, ex. 19, pp. 107–116. The focus of the amended complaint was the assertion that Mr. Jones wrongfully failed to inform Canoe and Mr. Ullman about causes of action against Meridian Bank regarding the bank's lack of funding for Canoe's operations, because Mr. Jones sought to protect the interests of the bank rather than his client. *Id.*

In December 2000, the Pennsylvania Court of Common Pleas granted the defendants' motion for summary judgment, holding that the claims were barred by the statute of limitations. Movant's Exhibits to Motion to Reopen, ex. 20, pp. 117–121.[2] That decision was appealed to the Pennsylvania Superior Court.[3] On January 16, 2004, the superior court vacated the order of summary judgment in favor of the defendants, holding that there were material issues of disputed fact surrounding the application of the statute of limitations, and remanded the civil action to the trial court. Movant's Exhibits to Motion to Reopen, ex. 23, pp. 146–152.

Upon remand, the defendants filed a second motion for summary judgment. *See Ullman v. Jones,* Adv. No. 11–0815, docket entry # 7, ex. 8.[4] The defendants asserted the following six bases for summary judgment:

The Jones Defendants made three arguments in their initial motion for summary judgment (filed November 3, 1999) upon which the Court has never ruled: (a) an argument invoking the doctrines of collateral estoppel and res judicata (based on the federal court action previously filed by Plaintiff Ullman), (b) an argument that Ullman has not pleaded a shareholders' derivative action (the only cause of action left open by the federal court action), and (c) an argument that Plaintiffs' claims are barred by certain releases that they executed on July 12, 1988. . . .

In addition or in the alternative, the Jones Defendants are entitled to summary judgment on the basis of a proper legal interpretation of the March 31, 1986 letter from Knute Albrecht ("Albrecht"), President and CEO of Meridian Commercial Credit Corporation ("MCCC"), to M. Robert Ullman ("Ullman"), President of Canoe Manufacturing Company ("Canoe"). Plaintiffs have repeatedly acknowledged that their entire case depends on the enforceability of the March 31, 1986 Albrecht letter to Ullman ("March 31, 1986 letter") as a separate, written contract between

---

**2.** The movant has only provided a copy of part of this state court decision.

**3.** The defendants in the 1993 state court civil action joined Meridian Bank as an additional defendant. Meridian Bank counterclaimed against the plaintiffs. Various agreements were then reached by which the claims by and against Meridian Bank were resolved, so that the December 2000 summary judgment ruling became a final order reviewable on appeal. Movant's Exhibits to Motion to Re-

open, ex. 21. These agreements may have released any lender liability claim against Meridian Bank as well as ended the bank's foreclosure action.

**4.** Movant has only included a portion of the memorandum supporting summary judgment in Movant's Exhibits to Motion to Reopen, ex. 24. The objectors attached their entire memorandum to a pleading filed in the adversary proceeding.

MCCC and Canoe. Plaintiffs allege that the Jones Defendants committed legal malpractice by not advising Canoe to sue MCCC for breach of that purported written contract in the spring of 1986. However, the plain language of the March 31, 1986 letter establishes, as a matter of law, that the letter does not contain the terms attributed to it by Plaintiffs. The March 31, 1986 letter does not, by its plain terms, commit MCCC to anything. To the extent that it provides hints of a future loan "settlement", it is merely an "agreement to agree", which is unenforceable under Pennsylvania law. Alternatively, if it committed MCCC to anything, the commitment was only to provide a portion of the referenced guaranties "and/or" make a[sic] available a portion of the referenced funds—promises (if they were such) that were indisputably fulfilled. Therefore, as a matter of law, the March 31, 1986 letter cannot provide a basis for Plaintiffs' legal malpractice claim against the Jones Defendants, and the Jones Defendants are entitled to summary judgment in their favor on Plaintiffs' claims.

In addition or in the alternative, the April 18, 1986 loan settlement documents constituted, as a matter of law, an integration of any earlier discussions, including the March 31, 1986 letter. As such, Plaintiffs never had an actionable claim against MCCC on the basis of the March 31, 1986 letter, because that letter would not have been admissible under the parol evidence rule and would have had no legal effect. Therefore, Plaintiffs cannot predicate any legal malpractice claim against the Jones Defendants on the basis of the March 31, 1986 letter for the additional or alternative reason that the March 31, 1986 letter was integrated into the April 18, 1986 loan settlement, and Plaintiffs ac-

knowledge that any legal malpractice cause of action against the Jones Defendants based on the April 18, 1986 loan settlement would be barred by the statute of limitations.

Finally, in addition or in the alternative, any claims by Canoe against the Jones Defendants did not survive Canoe's bankruptcy. Canoe did not schedule any such claims as assets of the bankruptcy estate, and Canoe's Chapter 7 Trustee never abandoned any such claims. Under controlling federal and Pennsylvania law, this Court accordingly does not have subject matter jurisdiction over any such claims and/or the Plaintiffs do not have standing to assert any such claims in this case.

*Id.,* pp. 8–10.

The state court defendants' memorandum of law in support of summary judgment argued at length that the plaintiffs' claims against attorney Jones and his law firm arose prepetition and were still part of the Canoe bankruptcy estate, as they had never been abandoned under 11 U.S.C. § 554(c), (d), because they had not been listed on the debtor's bankruptcy schedules. If still part of the bankruptcy estate, the defendants maintained that only the bankruptcy trustee had standing to prosecute those claims. *Id.,* pp. 45–58. In other words, the state court defendants drew a distinction between the trustee's motion to abandon claims against Meridian Bank and VF, which motion had been granted, and the debtor's tort claims against its former counsel. If those latter claims were not abandoned, the defendants maintained that they were still part of the bankruptcy estate, that 28 U.S.C. § 1334(d) would grant the bankruptcy court exclusive jurisdiction over the tort claims and the bankruptcy trustee exclusive authority to prosecute those claims.

The Pennsylvania Court of Common Pleas granted the defendants' second motion for summary judgment in December 2005. The parties have not provided me with the entire December 2005 opinion of the state court, only an excerpt. *See* Movant's Exhibits to Motion to Reopen, ex. 27, pp. 178–181. The excerpt states that summary judgment was granted because the state court determined that no binding loan commitment had ever been issued to Canoe by Meridian Bank in March 1986, and thus the plaintiff's tort claims, which had focused upon the alleged failure of Mr. Jones to provide Mr. Ullman with a copy of the March 1986 document and to advise him to enforce the loan commitment, was neither malpractice nor a breach of duty to the plaintiffs. *Id.,* p. 179, The state court explained:

> Because of the many missing elements and the intention of the letter to look to the future, we find that it does not constitute a binding contract. *On this basis alone we are granting defendants' motion for summary judgment.*

*Id.,* p. 179 (footnote omitted) (emphasis added).

The state trial court also stated that Canoe's tort claims against its former attorney had not been abandoned by the bankruptcy court's July 1990 order. The court wrote:

> Additionally, defendants argue that Summary Judgment is warranted on the basis that when the plaintiff was subsequently discharged in Bankruptcy Court, there was no abandonment by the trustee of plaintiff's claim against Jones, so that the claim against Jones was an asset of the debtor (plaintiff herein) that was in fact discharged. We hold that such a discharge without abandonment did in fact occur, and that Summary Judgment in favor of the defendants could be granted also on this ground.

*Id.,* pp. 179–80. Thus, summary judgment was granted on alternative grounds.

Upon the plaintiff's appeal from this December 2005 grant of summary judgment, the Pennsylvania Superior Court affirmed, and the Pennsylvania Supreme Court later denied any further appeal. *See Canoe Manufacturing Co., Inc. v. Jones,* 589 Pa. 736, 909 A.2d 1288 (2006); *see also In re Robert Ullman,* 995 A.2d 1207, 1210 n. 2 (Pa.Super.2010). Furthermore, the United States Supreme Court also denied certiorari. *Canoe Mfg. Co., Inc. v. Jones,* 549 U.S. 1282, 127 S.Ct. 1842, 167 L.Ed.2d 324 (2007).

Believing that the bankruptcy court had indeed abandoned the tort claims against Mr. Jones and his law firm, and that these state court defendants improperly convinced the state court otherwise, on November 4, 2008, Mr. Ullman filed a complaint in state court seeking leave to bring a private criminal complaint against the defendants, because the county district attorney had refused to take criminal action against them or to authorize Mr. Ullman to do so. *See In re Robert Ullman,* 995 A.2d at 1210. In affirming the state court's denial of relief to Mr. Ullman, the Pennsylvania Superior Court explained:

> Canoe and [appellant] had requested the Schuylkill County [d]istrict [a]ttorney to approve a private criminal complaint against Jones and WFJ and had submitted documentation to the [d]istrict [a]ttorney in support of their request. The [d]istrict [a]ttorney, after review of the same, did not approve the filing of a criminal complaint because, according to [Canoe and the appellant], he found no evidence of criminal wrongdoing after reviewing the information provided to him. This [p]etition was then filed to review the decision of the [d]istrict [a]ttorney.

Canoe and [appellant] argue that the documentation they have submitted to the [c]ourt would support a charge of [p]erjury against Jones and WFJ. They argue that statements, which they attribute to Jones and WFJ, made in legal arguments in a bankruptcy and a civil proceeding were false. They argue that these statements were that a bankruptcy claim of [appellant] and Canoe against Jones was not abandoned by the [b]ankruptcy [t]rustee but remained a part of the bankrupt[cy] estate, that estate involving Canoe and [appellant], and therefore when the [b]ankruptcy proceedings were concluded that claim was ended. These statements, [appellant] and Canoe maintain, were false because the documentation shows that these claims of [appellant] and Canoe were in fact abandoned by the [t]rustee; therefore, they, in essence, were returned to the [b]ankrupts, and they could proceed on their own to attempt to recover them outside the bankruptcy estate. [Appellant] and Canoe did file a civil suit in this [c]ourt based on those claims but the suit was dismissed by the Honorable C. Palmer Dolbin, on a motion for summary judgment. His decision was based on the fact that the claims had been discharged and ended when the bankruptcy was concluded.

*Id.*, at 1210 (footnote omitted).

The superior court also quoted from the opinion of the court of common pleas that explained the lower court's reasoning in denying Mr. Ullman's request to overturn the district attorneys' decision not to prosecute Mr. Jones and his law firm for perjury:

The [c]ourt has reviewed the relevant record and finds, regardless of the issue of abandonment or no abandonment, (the record before the [c]ourt is not completely clear whether the claims against Jones and WFJ were abandoned ...) the documentation and averments of [Canoe and Appellant] do not sufficiently make out a case of [p]erjury charges against Jones or WFJ. Perjury concerns statements that are made in an official proceeding and under oath which are materially false to the matter of the official proceeding. The specific statutory section reads: A person is guilty of perjury, a felony of the third degree, if in any official proceeding, he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true. There is not even an allegation here that any of the statements were made under oath in an official proceeding where testimony was being taken. The statements were written in a legal brief that, to the [c]ourt's review, was not even prepared or signed by Jones or WFJ. Further, as noted, even the documentation submitted by [Canoe and appellant] in part indicates that the claims against Jones had not been abandoned by the Trustee. The [d]istrict [a]ttorney, under these circumstances and based on the documentation, was in no way remiss in not approving a perjury complaint here. Although the [c]ourt is empowered to review the decision of the [d]istrict [a]ttorney pursuant to Pa. R.Crim. P. 506(B)(2), the [c]ourt is bound to uphold his decision if insufficient facts are alleged to support the issuance of criminal charges. If a prosecutor's decision to disapprove a private criminal complaint was based on a legal evaluation of the sufficiency of the complaint, then the trial court must undertake a de novo review of the complaint to ascertain whether it establishes a prima facie cause of action. The [c]ourt finds that [Canoe and appellant's] [c]omplaint and

attachments do not establish a prima facie case of [p]erjury.

*Id.*, at 1216.

For these reasons, the Pennsylvania Superior Court affirmed the dismissal of Mr. Ullman's attempt to bring a perjury action against Mr. Jones and his law firm on a private criminal complaint. *Id.* In April 2011, the Pennsylvania Supreme Court denied Mr. Ullman's petition for an allowance of an appeal. *In re Ullman,* 20 A.3d 489 (Pa.2011).[5]

In July 2010, Mr. Ullman wrote to his congressman, who then corresponded with the Executive Office of the United States Trustees in Washington, D.C. The Director, Clifford J. White, Jr. replied to the congressman, mentioning that Mr. Ullman had also sent letters directly to the Executive Office.[6] Movant's Exhibits to Motion to Reopen, ex. 28, p. 182–83. After declining Mr. Ullman's request to offer an opinion regarding the legal issue of abandonment of claims against Mr. Jones, *id.*, p. 182, Director White attached a "synopsis of the relevant facts in this case." *Id.*, p. 182. Mr. Ullman attached a copy of this synopsis as an exhibit to the instant motion to reopen, *id.*, p. 183, believing that it supports his position that the tort claims against Mr. Jones and his law firm were indeed abandoned, despite the state court's ruling to the contrary. He underlined the following paragraph of this synopsis:

> During the course of the bankruptcy case, Mr. Ullman contended that Canoe possessed certain lender liability claims against Meridian Commercial Credit Corporation ("Meridian") and others, including attorney Joseph Jones. After giving consideration to Mr. Ullman's al-

legations, the trustee moved to abandon the lender liability cause of action, and that motion was approved by the bankruptcy court on July 24, 1990. At the suggestion of Mr. Ullman, in December 1991, the trustee filed a motion to vacate the abandonment order. On March 11, 1992, the bankruptcy court denied that motion, finding that the trustee's decision to abandon the cause of action "was made in an informed, procedurally correct manner: and was, therefore, irrevocable. Mr. Ullman appealed the bankruptcy court's order to the district court. The district court issued an opinion on June 18, 1992, affirming the bankruptcy court's order.

Relying upon that paragraph, Mr. Ullman filed a motion in the Philadelphia Court of Common Pleas, requesting that it vacate its May 16, 2005 judgment in favor of the state court defendants. That motion was denied on January 11, 2011. *See Ullman v. Jones,* Adv. no. 11–0815, docket entry # 7, ex. 11.

On October 24, 2011, Mr. Ullman filed a complaint in this bankruptcy court, docketed at Adv. No. 11–00815, against Mr. Jones and his law firm. In this complaint, he complained of the defendants' contentions in state court regarding abandonment, which contentions he had "vigorously" disputed, but to no avail. *See Ullman v. Jones,* Adv. no. 11–0815, docket entry # 1, Complaint, at 2. As for relief from this bankruptcy court, he demanded that the "the U.S. Bankruptcy Court and the U.S. Trustee [ ] request the U.S. Department of Justice (a criminal referral) to make a formal investigation of the violation of two

---

5. Mr. Ullman may still be filing motions in the state court system to vacate the orders denying his attempt at a private criminal complaint.

6. Indeed, it appears that Mr. Ullman brought suit against Director White and others in district court on July 28, 2010. *See* C.A. 10–03794. That lawsuit was dismissed as frivolous. *Id.*

provisions of the U.S. Constitution and to prosecute those responsible for such violations."

By order dated January 3, 2012, I dismissed Mr. Ullman's complaint without prejudice for lack of subject matter jurisdiction. *See, e.g., Rockefeller v. Comcast Corp.*, 424 Fed.Appx. 82, 83 n. 1 (3d Cir.2011) (non-precedential) ("The dismissal necessarily was without prejudice because the District Court did not (and could not) reach the merits of the complaint."). Federal court subject matter jurisdiction is generally determined as of the time litigation commences. *See, e.g., Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."). For a bankruptcy court to have subject matter jurisdiction over an adversary proceeding, the outcome of that litigation must have some conceivable effect upon a bankruptcy case. *See, e.g., In re Winstar Communications, Inc.*, 554 F.3d 382, 405 (3d Cir.2009). I explained to Mr. Ullman that unless the chapter 7 bankruptcy case of Canoe were first reopened under 11 U.S.C. § 350(b), the outcome of Mr. Ullman's adversary proceeding could have no possible effect on the administration of that case. *See, e.g., In re Smith*, 2010 WL 1328918, at *3 (E.D.N.Y.2010); *In re Rashid*, 2004 WL 2861872, at *2–*3 (E.D.Pa.2004); *Walnut Associates v. Saidel*, 164 B.R. 487, 491 (E.D.Pa.1994); *Cook v. Chrysler Credit Corp.*, 174 B.R. 321, 327 (M.D.Ala.1994) ("Absent reopening, there is no longer a bankruptcy estate being administered which could be affected by the present litigation. Therefore, the court does not find the present action to be one which arises under or relates to a Title 11 proceeding."); *In re Brantley*, 1997 WL 74663, at *1 (Bankr.W.D.Ark.1997) (hold-ing that an adversary proceeding filed after a debtor was discharged and the bankruptcy case was closed is improper); *In re Cassidy*, 1995 WL 661244, at *3 (Bankr. N.D.Ga.1995); *see also Matter of Carter*, 38 B.R. 636, 638 (Bankr.D.Conn.1984) ("[A] state-court action may be removed to the bankruptcy court only if a title 11 case is pending.").

In order to address the jurisdictional limitations of this court, Mr. Ullman filed his present motion to reopen. Presumably, if the motion to reopen were granted, Mr. Ullman would refile his October 2011 complaint, as it was dismissed without prejudice.

## II.

Section 350(b) of the Bankruptcy Code provides for the reopening of a bankruptcy case "to administer assets, to accord relief to the debtor, or for other cause." Whether to reopen a closed bankruptcy case is committed to the discretion of the bankruptcy court. *See, e.g., Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir.1997); *Judd v. Wolfe*, 78 F.3d 110, 116 (3d Cir.1996); *Matter of Case*, 937 F.2d 1014, 1018 (5th Cir.1991) ("This discretion depends upon the circumstances of the individual case and accords with the equitable nature of all bankruptcy court proceedings."); *Hawkins v. Landmark Finance Co.*, 727 F.2d 324 (4th Cir.1984); *Matter of Becker's Motor Transp., Inc.*, 632 F.2d 242, 245 (3d Cir.1980); *Urbanco, Inc. v. Urban Systems Streetscape, Inc.*, 111 B.R. 134 (W.D.Mich.1990). The burden of demonstrating circumstances sufficient to justify the reopening is placed upon the moving party. *See, e.g., In re Saunders*, 2011 WL 671765, at *2 (Bankr. M.D.Ga.2011); *In re Gutches*, 430 B.R. 342, 344 (Bankr.E.D.Pa.2009); *In re Redcay*, 2007 WL 4270378, at *2 (Bankr. E.D.Pa.2007); *In re Cloninger*, 209 B.R.

125, 126 (Bankr.E.D.Ark.1997); *In re Nelson*, 100 B.R. 905 (Bankr.N.D.Ohio 1989).

■ In exercising that discretion, a bankruptcy court should consider a variety of factors:

> A bankruptcy judge may consider a number of nonexclusive factors in determining whether to reopen, including (1) the length of time that the case has been closed; (2) whether the debtor [or movant] would be entitled to relief if the case were reopened; and (3) the availability of nonbankruptcy courts, such as state courts, to entertain the claims.

*Redmond v. Fifth Third Bank*, 624 F.3d 793, 798 (7th Cir.2010); *see, e.g., In re Antonious*, 373 B.R. 400, 405–06 (Bankr. E.D.Pa.2007).

■ Although a period of almost two decades since this case was closed would render the instant motion to reopen problematic, the objectors focus, as shall I, upon whether any valid purpose would be served by reopening this case. They contend that neither Mr. Ullman nor the debtor could obtain any meaningful relief thereby. If so, then Mr. Ullman's motion should be denied. *See, e.g., Arleaux v. Arleaux*, 210 B.R. 148, 149 (8th Cir. BAP 1997); *In re Rashid*, 2004 WL 2861872, at *5 (E.D.Pa.2004); *In re Carberry*, 186 B.R. 401, 402 (Bankr.E.D.Va.1995) (a bankruptcy court "should not reopen a bankruptcy case where it appears that to do so would

be futile and a waste of judicial resources"); *In re Nelson*, 100 B.R. 905, 907 (Bankr.N.D.Ohio 1989) ("[T]he court will not grant a motion to reopen when no clear benefit is shown to creditors.... Because no benefit will inure to Debtors' estate or their creditors, Debtors' motion should be denied.").

Upon my review of Mr. Ullman's motion to reopen this case, it is unclear the precise relief he hopes to achieve were the motion granted. There are three possibilities—all of them outside the power of this court to grant.

■ First, I would assume that, upon reopening this case, Mr. Ullman would refile his adversary proceeding against Mr. Jones and his law firm seeking that this court direct the United States trustee and/or the Justice Department to investigate criminal activities of these defendants. Although a bankruptcy judge may refer potential criminal matters to the United States Trustee or Unites States Attorney, *see* 18 U.S.C. § 3057(a),[7] the bankruptcy judge cannot compel prosecution. *See generally Shuffman v. United States*, 648 F.2d 812 (2d Cir.1981) (affirming denial of court to order United States Attorney to prosecute a particular case where court stated it lacked that authority); *In re El San Juan Hotel Corp.*, 239 B.R. 635, 653 (1st Cir. BAP 1999) ("Kagan has cited no authority, and we have been

---

**7.** Section 3057 provides:

> (a) Any judge, receiver, or trustee having reasonable grounds for believing that any violation under chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed. Where one

> of such officers has made such report, the others need not do so.
>
> (b) The United States attorney thereupon shall inquire into the facts and report thereon to the judge, and if it appears probable that any such offense has been committed, shall without delay, present the matter to the grand jury, unless upon inquiry and examination he decides that the ends of public justice do not require investigation or prosecution, in which case he shall report the facts to the Attorney General for his direction.

unable to locate any, requiring a bankruptcy judge to do any more than report an alleged criminal violation."). Moreover, such relief seems to be the same or similar to that already sought by Mr. Ullman in June 1993, which relief was denied. *See generally Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (claim preclusion/res judicata); *In re Rashid*, 2004 WL 2861872, at *5 (debtor's claim of "fraud on the court" was previously litigated and so would be barred by res judicata).

As for the criminal matters to be investigated, Mr. Ullman's complaint filed in October 2011 did not identify any violations of the Bankruptcy Crimes Act found in Title 18, Chapter 9, 18 U.S.C. §§ 151–58. Rather, Mr. Ullman complains that the putative defendants committed perjury by wrongfully arguing in state court that his claims against them were not abandoned under section 554, although they knew that the claims had been abandoned. Not only would such allegedly criminal behavior have occurred in another forum and many years after this bankruptcy case was closed, but Mr. Ullman's contentions have been vetted and rejected by the state court system in which such allegedly wrongful conduct occurred. The provisions of 18 U.S.C. § 3057 would not apply.

Accordingly, no valid purpose would be served by having this chapter 7 case reopened so that Mr. Ullman could litigate the complaint he previously filed with this court in October 2011.

Second, Mr. Ullman may believe that, upon reopening, this court can correct any

legal misconstruction of bankruptcy laws that may have been committed by the state court and thereby resurrect his state law claims against Mr. Jones and his law firm.[8] Such a belief misunderstands the power of this court.

 A bankruptcy court cannot sit in review of state court judgments, be they entered by confession, *see FRG, Inc. v. Manley*, 919 F.2d 850 (3d Cir.1990), by default, *see Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2nd Cir.1987), *cert. denied*, 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988), or after trial or hearing. *See, e.g., Heiser v. Woodruff*, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946); *In re Brown*, 951 F.2d 564 (3d Cir.1991). If a state court has incorrectly decided a matter within its jurisdiction to resolve, the only federal court with the power to correct its error is the United States Supreme Court. *See, e.g., Lance v. Dennis*, 546 U.S. 459, 463, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006); *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970) ("[L]ower federal courts possess no power whatever to sit in direct review of state court decisions.") Lower federal courts, including bankruptcy courts, must give preclusive effect to that valid state court judgment. *See, e.g.,* 28 U.S.C. § 1738; *Levine v. Litman*, 91 Fed.Appx. 217, 219–20 (3d Cir.2004) (nonprecedential). For example, in *In re Brown*, the Third Circuit held that a bankruptcy court must give preclusive effect to a state court summary judgment order

8. This position overlooks the state court's determination that Meridian Bank never issued a loan commitment to Canoe in March 1986, and so the failure of Mr. Jones to provide a copy of this document to his client and to recommend that action be taken to enforce the document caused no injury to Canoe or Mr. Ullman.

In other words, the state court's conclusions about bankruptcy abandonment were only an *alternative* basis for its adverse ruling. Mr. Ullman appears to believe, incorrectly, that he would have prevailed had the state court understood that his claims had been abandoned.

despite the bankruptcy court's belief that summary judgment was incorrectly granted:

> The summary judgment is sufficiently final so that it should be given preclusive effect as to the matters considered and decided in that phase of the controversy between the Browns and the bank. To litigate those issues again in the bankruptcy court would be the "kind of waste of judicial resources" that we referred to in *In re Braen,* 900 F.2d [621] at 625 [ (3d Cir.1990) ]. The questioned procedural errors of the state trial judge are matters to be reviewed in the New Jersey courts, rather than in the bankruptcy court.

*Id.,* 951 F.2d at 570.

Mr. Ullman raised Pennsylvania state law claims such as legal malpractice and breach of fiduciary duty in his lawsuit against Mr. Jones and his law firm. Such state law claims were clearly within the jurisdiction of the state court system. With counsel, Mr. Ullman had the opportunity to argue his position. Upon the adverse judgment, he sought appellate review within the state court system without success, and even sought review by the United States Supreme Court.

█ It would be futile to reopen this bankruptcy case so that Mr. Ullman could request that this court direct the state court regarding the proper scope of 11 U.S.C. § 554, after a final determination in that court system. *See, e.g., In re Highway Truck Drivers & Helpers Local Union # 107,* 888 F.2d 293, 298–99 (3d Cir. 1989).[9]

**9.** Whether the debtor's claims against Mr. Jones and his law firm were abandoned (any claims belonging to Mr. Ullman himself were never part of the bankruptcy estate) is more complicated than Mr. Ullman realizes. Section 554 states in relevant part:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> * * *
>
> (c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
>
> (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

Clearly, in May 1990, the trustee was moving under section 554(a) to abandon any lender liability claims against Meridian Bank and any claims against VF and Mr. Pugh. Such relief was granted in July 1990. The trustee did not move to abandon any claims against Mr. Jones or his law firm, presumably because the so-called "commitment letter" of 1986 had not yet come to light. When the trustee learned of it, he mentioned it in his motion to vacate in support of his belief that a lender liability claim against Meridian Bank would be in good faith.

The possibility of claims by the debtor against Mr. Jones and his firm for allegedly not revealing this letter and advising action against Meridian Bank might have first surfaced in Mr. Ullman's separate motion to vacate the July 1990 abandonment order in April 1993. Whether the language in the June 1993 court order denying this motion would fall within the scope of section 554(d) is not free from doubt.

If section 554(a) and (d) are inapplicable, section 554(c) provides that property (including claims of the debtor) not administered by the trustee when the bankruptcy case is closed are abandoned. But section 554(c) refers to property that is identified on the debtor's bankruptcy schedules. Clearly, the claims against Mr. Jones and his law firm were not scheduled, as the discovery of the Meridian Bank letter to Canoe in 1986 did not occur until 1991, more than two years after the schedules were filed. Rather than simply amending the debtor's schedules as permitted by Fed. R. Bankr.P. 1009(a), Mr. Ullman sought leave of court to do so in 1993, as part of his motion to vacate the earlier abandonment order, remove the chapter 7 trustee and

The third possible relief that Mr. Ullman intends to seek, were the bankruptcy case reopened, would be to request this bankruptcy court to adjudicate tort claims against Mr. Jones and his law firm. He may intend to argue that if those claims were not abandoned, as the state court suggested, they remain property of the bankruptcy estate under section 554(d) and can be decided by this court.

Again, this argument would overlook the preclusive effect of the state court judgment arising from the civil litigation against those defendants commenced in 1993. The state court did not simply conclude that it had no jurisdiction to decide those claims because they were part of the bankruptcy estate. The state court ruled, and its ruling was affirmed, that the 1986 letter did not constitute a binding loan commitment, and so there was no malpractice or breach of duty to Canoe that had been committed by Mr. Jones and his law

firm. As noted earlier, such an adjudication is binding upon this bankruptcy court. *See, e.g., Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) (state court adjudication in favor of creditor and against the debtor prevented the district court from entering a subsequent judgment in favor of the debtor on the same claim against the creditor). Indeed, were Mr. Ullman to commence such litigation, this bankruptcy court may not even have subject matter jurisdiction to grant such relief. *See, e.g., Great Western Mining & Mineral Co. v. Fox Rothschild, LLP,* 615 F.3d 159 (3d Cir.2010) (explaining the four components of the *Rooker–Feldman* doctrine).

Furthermore, even if the state court summary judgment ruling were not preclusive, any attempt to file state court tort claims against the putative defendants in this court in 2012, based upon actions taken or not taken in 1986 or 1987, would

---

hold the trustee liable to the estate. That motion was denied for reasons stated earlier in the text.

Some courts construe section 554(c) narrowly, concluding that an asset not scheduled is not abandoned. *See, e.g., Vreugdenhill v. Navistar Intern. Transp. Corp.,* 950 F.2d 524, 526 (8th Cir.1991). Other courts hold that if a bankruptcy trustee clearly knows of an asset—e.g., a prepetition cause of action—and declines to assert that claim before closing the case, then the cause of action will indeed be considered as abandoned to the debtor even if the asset had not been scheduled. *See, e.g., Mele v. First Colony Life Ins. Co.,* 127 B.R. 82 (D.D.C.1991). Recently, in *In re Kane,* 628 F.3d 631 (3d Cir.2010), the Third Circuit found, in the context of rejecting a judicial estoppel defense, that a cause of action not scheduled by a chapter 7 debtor was nonetheless abandoned to the debtor on the facts there presented. In so doing, it did not squarely address the literal language of section 554(c).

Clearly, the chapter 7 trustee in the Canoe case knew of the 1986 letter by 1991 and of Mr. Jones's representation of the debtor prepetition while a director of Meridian Bank.

He also had copies of Mr. Ullman's April 1993 motion, and his complaint about conflict of interest. Whether such knowledge would render section 554(c) applicable as to the claims against Mr. Jones and his law firm when the Canoe case was closed in 1995 may also be argued.

One last point about the 2005 state court ruling should be mentioned. As the Third Circuit noted in *In re Kane,* when a debtor fails to disclose a cause of action during a bankruptcy case and then attempts to litigate that cause of action after the bankruptcy case has concluded, the issue of judicial estoppel may arise in that second forum. *See, e.g., Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). Because Canoe was a corporation, it did not receive a bankruptcy discharge. *See* 11 U.S.C. § 727(a)(1). Although the state court in 2005 stated that the claims against the defendant had been "discharged," it probably meant that the debtor was judicially estopped to raise non-scheduled claims. This state court ruling was issued five years before the Third Circuit provided additional guidance on the question in *In re Kane.*

have limitations problems. The Pennsylvania Superior Court held in 2004 that, depending upon disputed issues of fact, the statute of limitations may have been tolled until 1991, when Mr. Ullman obtained the 1986 letter from Mr. Jones in discovery. If so, then his lawsuit in 1993 would fall within the two-year state limitations period. *See generally* 42 Pa.C.S.A. § 5524(7); *Riggs v. AHP Settlement Trust,* 421 Fed. Appx. 136, 138 (3d Cir.2011) (non-precedential) ("Claims based on fraud, breach of fiduciary duty, and negligence are subject to a two-year limitations period."). However, any such tolling would not support a 2012 lawsuit on those same claims.

The Bankruptcy Code contains its own limitations tolling provisions in section 108. To the extent that the limitations periods on the debtor's claims against the putative defendants had not expired at the time of Canoe's bankruptcy filing in 1987, section 108(c) of the Bankruptcy Code would extend those limitations to the latter of Pennsylvania's two-year limitations period or only 30 days after the case was closed in 1995, which closing terminated the bankruptcy stay under section 362(c)(2)(A). *See generally James v. McCoy,* 56 F.Supp.2d 919, 929–31 (S.D.Ohio 1998); *In re Mendez,* 2011 WL 4459093, at *3 (Bankr.D.Mass.2011); *In re Hermosilla,* 430 B.R. 13, 20 (Bankr.D.Mass.2010).

Thus, even if this bankruptcy court had the power to adjudicate claims against Mr. Jones and his law firm, were the case reopened, they would appear to have an affirmative limitations defense to such claims. *See generally James v. McCoy.*

### III.

Since no later than 1991, Mr. Ullman has believed that Meridian Bank entered into a binding commitment to lend money to Canoe, and that Canoe's former attorney, Mr. Jones, hid that fact from him. He must also believe that, with such funding, Canoe could have avoided bankruptcy and the liquidation of its assets.

Mr. Ullman brought suit in federal district court in 1992 against Mr. Jones (and others) without success. He brought suit in state court in 1993 against Mr. Jones and his law firm, also without success. Although Mr. Ullman believes otherwise, this lack of success was not primarily dependent upon the state court's legal determination concerning the bankruptcy trustee's abandonment of claims against Mr. Jones.

Whether or not the Philadelphia Court of Common Pleas correctly decided that the March 1986 letter was not a binding loan commitment, its decision cannot be reviewed in this court. Whether or not Mr. Jones, through his state law counsel, was correct in his interpretation of section 554 of the Bankruptcy Code is also not now reviewable in this court; and even if it were, it would not alter the state court's ruling. That ruling has been affirmed by the Pennsylvania Superior Court and not overturned by the Pennsylvania Supreme Court or the United States Supreme Court.

Mr. Ullman's belief that Mr. Jones committed perjury in his arguments before the state court has also been rejected by the local district attorney, which rejection was upheld by the state appellate court system. A bankruptcy court could not reverse that determination; nor could this court compel the U.S. Attorney to prosecute.

To now reopen a bankruptcy case that was closed in 1995, in order for Mr. Ullman to relitigate these issues would be futile and serve no valid purpose. Therefore, by accompanying order, the motion to reopen will be denied. *See, e.g., In re Rashid.*

## ORDER

AND NOW, this 1st day of February 2010, for the reasons given in the accompanying memorandum, it is hereby ordered that the motion of Mr. M. Robert Ullman, either individually or acting *pro se* on behalf of the debtor, to reopen this closed chapter 7 case pursuant to 11 U.S.C. § 350(b) is denied.

## STATEMENT OF REASONS IN SUPPORT OF ORDER

AND NOW, Mr. M. Robert Ullman, having filed on February 17, 2012 a "motion to reconsider" this court's order dated February 1, 2012, which order sustained objections thereto and denied Mr. Ullman's motion to reopen this closed chapter 7 case under 11 U.S.C. § 350(b),

And the instant motion for reconsideration is opposed by Joseph H. Jones, Esq. and the law firm of Williamson, Friedberg and Jones—the objectors to the previous motion to reopen,

And Fed. R. Bankr.P. 9023 incorporates in large part Fed.R.Civ.P. 59 into bankruptcy cases. However, Rule 9023 contains a 14–day deadline for motions seeking to alter or amend bankruptcy judgments or final orders. (Rule 59 contains a 28–day deadline.[1]) As the instant motion for reconsideration was filed 16 days after entry of the February 1st order, the provisions of Rule 9023 are inapplicable. *See, e.g., Allen v. Chapter 7 Trustee,* 223 Fed.Appx. 770 (10th Cir. 2007); *In re Alchar Hardware Co., Inc.,* 759 F.2d 867, 869 (11th Cir.1985); *see also, e.g., Fullman v. Postmaster General*

*of U.S.,* 388 Fed.Appx. 89 (3d Cir.2010) (non-precedential) (motion filed beyond the deadline cannot be considered under Rule 59(e)),

And as the instant motion was filed within one year of the order complained of, I shall treat the motion as if seeking relief under Fed. R. Bankr.P. 9024, which procedural rule incorporates Fed.R.Civ.P. 60. *See, e.g., Ahmed v. Dragovich,* 297 F.3d 201, 209 (3d Cir.2002),[2]

And Rule 60(a) does not apply in these circumstances, as there is no suggestion that the February 1st order was entered due to a clerical error,

And Rule 60(b) provides that a "court may relieve a party ... from a final judgment, order or proceeding, for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud ..., misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

---

1. Effective December 1, 2009, the Rule 9023 deadline was increased from 10 days to 14 days. The 28–day deadline found in Rule 59(e), however, was not incorporated, owing to the shorter deadline for taking an appeal from a bankruptcy court decision. *See* Advisory Committee Note (2009). I also note that in 1995, the language of Rule 59(e) was changed so that the deadline is met by filing the motion with the court, and not by its service upon an opposing party.

2. Indeed, the objectors have assumed that Mr. Ullman was seeking relief under Rule 9024. *See* Response to Motion, at 3 (unpaginated).

And a hearing need not be held to determine a motion for relief under Rule 9024. *See United States v. 8136 S. Dobson Street,* 125 F.3d 1076, 1086 (7th Cir.1997) (federal court has "substantial discretion in determining whether to conduct an evidentiary hearing on a Rule 60(b) motion"); *Atkinson v. Prudential Property Co.,* 43 F.3d 367, 374 (8th Cir.1994) (same); *see also Mincey v. Head,* 206 F.3d 1106, 1124 (11th Cir.2000) (Rule 59(e) motion denied without a hearing),

And the purpose of Rule 60(b) is "to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Moss v. Potter,* 2007 WL 1726519, at \*1 (W.D.Pa.2007) (quoting *Boughner v. Secretary of Health, Education, and Welfare,* 572 F.2d 976, 977 (3d Cir.1978)). The decision to grant or deny relief pursuant to Rule 60(b) is committed to the discretion of the trial court. *See, e.g., Ibarra v. W.Q.S.U. Radio Broadcast Org.,* 218 Fed. Appx. 169 (3d Cir.2007) (non-precedential) (and cases cited),

And Mr. Ullman asserts that the memorandum accompanying the February 1, 2012 order contained "errors of fact and law." In so contending, he does not present "newly discovered evidence" in support of his motion for reconsideration,

And newly discovered evidence refers to evidence that: (1) is material and not merely cumulative; (2) was not discoverable before trial through the exercise of reasonable diligence; and (3) would probably have changed the outcome of the trial. *Compass Technology, Inc. v. Tseng Laboratories, Inc.,* 71 F.3d 1125, 1130 (3d Cir. 1995). The movant bears a "heavy burden," which requires "more than a showing of the potential significance of the new evidence." *Bohus v. Beloff,* 950 F.2d 919,

930 (3d Cir.1991) (quoting *Plisco v. Union R. Co.,* 379 F.2d 15, 17 (3d Cir.1967)). Relief should only be granted when "extraordinary justifying circumstances are present." *Id.,*

And all of the exhibits attached to the instant motion were available to the movant prior to the February 1st adjudication, and most, if not all, of the exhibits were previously presented to this court and reviewed in connection with the February 1st ruling. To the extent Mr. Ullman is attaching copies of additional documents, he was fully aware of those documents when he filed his motion to reopen this bankruptcy case. As the objectors now contend in their response, ¶ 15, Mr. Ullman has not presented new evidence within the narrow scope of that phase,

And thus relief under Rule 60(b)(2) has not been demonstrated. *See, e.g., Aquino v. U.S.,* 2011 WL 2462936, at \*2 (M.D.Pa. 2011),[3]

And, for the following reasons, Mr. Ullman has not demonstrated that any other provisions of Rule 60(b) justify relief from the February 1st order denying reopening of this closed chapter 7 case,

And 11 U.S.C. § 350(b) permits a bankruptcy court to reopen a closed case,

And whether to reopen a bankruptcy case under 11 U.S.C. § 350(b) is subject to the discretion of the bankruptcy court. *See, e.g., Donaldson v. Bernstein,* 104 F.3d 547, 551 (3d Cir.1997); *Judd v. Wolfe,* 78 F.3d 110, 116 (3d Cir.1996); *Matter of Case,* 937 F.2d 1014, 1018 (5th Cir.1991). The burden of demonstrating circumstances sufficient to justify the reopening is placed upon the moving party. *See, e.g., In re Saunders,* 2011 WL 671765, at \*2 (Bankr.M.D.Ga.2011); *In re Redcay,* 2007

---

**3.** In addition, as will be discussed below, none of the documents attached to the motion for reconsideration would alter the outcome of the challenged ruling.

WL 4270378, at *2 (Bankr.E.D.Pa.2007); *In re Cloninger,* 209 B.R. 125, 126 (Bankr. E.D.Ark.1997); *In re Nelson,* 100 B.R. 905 (Bankr.N.D.Ohio 1989),

And in exercising that discretion, a court should consider a variety of factors:

> A bankruptcy judge may consider a number of nonexclusive factors in determining whether to reopen, including (1) the length of time that the case has been closed; (2) whether the debtor would be entitled to relief if the case were reopened; and (3) the availability of non-bankruptcy courts, such as state courts, to entertain the claims.

*Redmond v. Fifth Third Bank,* 624 F.3d 793 798 (7th Cir.2010); *see, e.g., In re Antonious,* 373 B.R. 400, 405–06 (Bankr. E.D.Pa.2007),

And the February 1st order denying Mr. Ullman's motion to reopen this chapter 7 bankruptcy case that had been closed in 1995 was based primarily upon a determination that Mr. Ullman was seeking relief from this court, via reopening, that could not be provided. *See, e.g., In re Rashid,* 2004 WL 2861872, at *5 (E.D.Pa.2004). In essence, he was seeking to overturn a state court summary judgment ruling that was entered against him and in favor of Mr. Jones and the law firm of Williamson, Friedberg and Jones in December 2005. This summary judgment was later affirmed by the Pennsylvania Superior Court, and further review was denied by the Pennsylvania and United States Supreme Courts,

And in seeking to overturn the state court judgment Mr. Ullman had focused his disagreement with the state court's interpretation of 11 U.S.C. § 554, which provision addresses abandonment of assets of the debtor. This court's February 1st ruling, however, emphasized that the state court's statutory interpretation of section 554 of the Bankruptcy Code was only a

secondary basis for the state court's ruling adverse to Mr. Ullman. Its primary ground for granting summary judgment against Mr. Ullman was that his state law tort claims against Mr. Jones and his law firm were premised upon Mr. Ullman's contention that a letter dated March 31, 1986, sent by Meridian Bank to Mr. Ullman on behalf of Canoe, was a legal binding commitment to lend funds to Canoe. The state court, however, concluded that the March 31, 1986 letter was not a binding commitment to lend under Pennsylvania law, and accordingly the tort claims raised by Mr. Ullman were without foundation,

And my February 1st memorandum explained that this bankruptcy court had no power to review or reverse such a ruling,

And in Mr. Ullman's instant motion for reconsideration, the errors of fact and law of which he now complains concern the failure of this bankruptcy court to recognize that the March 31, 1986 letter was indeed a commitment letter. In other words, in his original motion to reopen, Mr. Ullman unsuccessfully tried to persuade me to review the state court's interpretation of section 554. In his present motion to reopen, he now shifts his focus to the state court's ruling that Canoe never received a commitment letter,

And in support of his instant contention that the state court wrongfully decided that the March 31, 1986 letter was not a commitment letter, Mr. Ullman makes reference to a Pennsylvania Superior Court Memorandum, dated January 2004, which memorandum refers to the March 31, 1986 correspondence as a commitment letter, and a petition filed with the Pennsylvania Supreme Court by Mr. Jones and his law firm in April 2004 that makes the same reference. Motion, at 5–6. Mr. Ullman also attaches a copy of the March 31, 1986

correspondence and copies of other documents that he now argues demonstrate that the state court erred in concluding otherwise. Motion, at 8–10,

And although the alleged error by the state court complained of in the present motion for reconsideration differs from the previous error asserted in the original motion, Mr. Ullman's intent in seeking to reopen this bankruptcy case remains unchanged: to have such alleged errors made in the state court's 2005 adjudication against him corrected in this forum,

And as I discussed in detail in the February 1st memorandum, at pp. 20–21, a bankruptcy court has no power to sit in review and correct purported errors of law made by a state court in litigation over which the state court properly exercised jurisdiction. *See, e.g., In re Highway Truck Drivers & Helpers Local Union # 107*, 888 F.2d 293, 298–99 (3d Cir.1989). Thus, Mr. Ullman's latest contention that the March 31, 1986 correspondence was a binding loan commitment letter does not warrant reconsideration of this court's denial of his motion to reopen this closed bankruptcy case under section 350(b) of the Bankruptcy Code, where the relief sought in reopening is a futile attempt to relitigate the state court issues. *See Matter of Property Management and Inv. Inc.*, 19 B.R. 202, 204 (Bankr.M.D.Fla. 1982) (Rule 60(b) is not a basis for a federal bankruptcy court to overturn a valid order entered in state court),

And, viewed in the context of Rule 60(b), the February 1st order was entered after careful review of the submissions made by Mr. Ullman and the objectors. The pres-

ent motion, albeit with a different focus, makes the same argument as Mr Ullman's prior motion (and without newly discovered evidence): the state court erred in granting summary judgment against him and this court should correct its erroneous judgment. This does not warrant relief under Rule 60(b)(6), *see, e.g., Holland v. Holt*, 409 Fed.Appx. 494, 497 (3d Cir.2010) (non-precedential):

> "[A] party seeking Rule 60(b)(6) relief must demonstrate the existence of 'extraordinary circumstances' that justify reopening the judgment." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir.2008) (footnote omitted). Holland showed no extraordinary circumstances. Indeed, he merely reargued the merits of his claim and reasserted his contention that he can proceed under § 2241.

And, moreover, the provisions of Rule 60(b)(3)–(5) are clearly inapplicable,

And as to Rule 60(b)(1), were this issue not foreclosed,[4] I am not persuaded that this court committed a mistake in ruling that a bankruptcy court has no power to review and reverse a validly entered state court judgment,

Accordingly, an order will be entered denying the instant motion for reconsideration. *See Ibarra v. W.Q.S.U. Radio Broadcast Org.*

---

4. Under Third Circuit precedent, since legal errors are reviewable on appeal, once the appeal period has expired such errors cannot be reviewed by the trial court as "mistakes" under Rule 60(b)(1). *Page v. Schweiker*, 786 F.2d 150, 154–55 (3d Cir.1986); *see, e.g., Hol-*land v. Holt, 409 Fed.Appx. at 497 n. 4; *James v. Virgin Islands Water and Power Authority*, 119 Fed.Appx. 397, 401 (3d Cir.2005) (non-precedential). Here, the appeal period under Fed. R. Bankr.P. 8002(a) expired before the instant motion was filed.